UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

PEARSON EDUCATION, INC. & CENGAGE          :
LEARNING INC.
                                                                          :

            Plaintiffs,                                                   08 Civ. 8034 (DAB) (AJP)
                                                                          :

            -against-                                                     **REPORT AND RECOMMENDATION**
                                                                          :

HENRY NUGROHO, d/b/a SBOOKS4SALE, d/b/a
MR. SBOOKS 4 SALE, d/b/a SURYANET,         :

            Defendant.                                                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x


**ANDREW J. PECK, United States Magistrate Judge:**

**To the Honorable Deborah A. Batts, United States District Judge:**

            Plaintiffs Pearson Education, Inc. and Cengage Learning Inc.[1] bring this action

alleging that defendant Henry Nugroho has infringed the copyrights to their textbooks by selling,

without their permission, "electronic copies of instructors' solutions manuals" that provide answers

to the questions posed in their copyrighted textbooks.  (Dkt. No. 1: Compl. ¶¶ 1, 21, 28.)

            Presently before the Court is plaintiffs' summary judgment motion.  (Dkt. No. 28: Pls.

Notice of Motion; see also Dkt. No. 29: Pls. Br.; Dkt. No. 30: Essig Aff.; Dkt. No. 31: Sampson Aff.;

Dkt. No. 32: Scileppi Aff.; Dkt. No. 33: Siewert Aff.; Dkt. No. 34: Pls. Rule 56.1 Stmt.)

---

[1]       On May 22, 2009, plaintiffs The McGraw-Hill Companies, Inc. and John Wiley & Sons, Inc.
          dismissed their claims without prejudice.  (See Dkt. No. 20: Notice of Voluntary Dismissal.)

2

For the reasons set forth below, plaintiffs' summary judgment motion should be

<u>GRANTED</u>.

## <u>FACTS</u>

Pearson owns the copyright and has United States Copyright Registrations for 130

textbooks at issue in this litigation and Cengage owns the copyright and has United States Copyright

Registrations for fifty-seven textbooks at issue in this litigation.  (<u>See</u> Dkt. No. 34: Pls. Rule 56.1

Stmt. ¶¶ 1-2; Dkt. No. 30: Essig Aff. ¶¶ 3-4 & Ex. A: Certificates of Registration; Dkt. No. 31:

Sampson Aff. ¶¶ 3-4 & Ex. B: Certificates of Registration.)   Plaintiffs also have published

"Instructor's Solutions Manuals", which "contain only the answers to the problems in the textbook."

(Essig Aff. ¶ 5; Sampson Aff. ¶ 5.)  Plaintiffs' "Instructor's Solutions Manuals" are "unregistered."

(Dkt. No. 39: Pls. Reply Br. at 4; Dkt. No. 37: Nugroho Aff. ¶ 3(a).)

In July 2008, Jennifer Siewert, a paralegal at plaintiffs' counsel's firm, purchased from

Nugroho through PayPal  electronic copies of instructor's solutions manuals for Pearson's <u>Advanced</u>

<u>Accounting</u> textbook and Cengage's <u>Advanced Engineering Mathematics</u> textbook. (Siewert Aff.

¶¶ 2-3 & Ex. J: Advanced Accounting Instructor's Solutions Manual, & Ex. K: Advanced

Engineering Mathematics Instructor's Solutions Manual; <u>see</u> Nugroho Aff. ¶ 2(a)-(b).)   The

instructor's solutions manuals purchased from Nugroho are "identical" to the instructor's solutions

manuals that Pearson and Cengage publish and sell.  (Sampson Aff. ¶ 6; Essig Aff. ¶ 6.)

By subpoenaing PayPal, plaintiffs obtained evidence that Nugroho sold 130 different

works with the "same title" as Pearson's copyrighted textbooks and fifty-seven different works with

the "same title" as Cengage's copyrighted textbooks.  (Scileppi Aff. ¶¶ 9-11 & Exs. H-I.)  Nugroho "has come forward with no written evidence concerning the content of the solutions manuals that he sold" (Scileppi Aff. ¶ 12), but has admitted that he "sold copies of solutions manuals in electronic format to people over the Internet," which contained "answers to problems and exercises in plaintiffs textbooks" (Nugroho Aff. ¶ 2(a)-(b)).  Nugroho maintains that he is "not aware of selling 'pirated copies of instructors' solution manual.'  The ones [he] was selling were [a] collection of answers to problems in some books, which [he] believed were written, compiled and distributed freely by the students on the Internet."  (Scileppi Aff. Ex. D: Nugroho 5/13/09 Aff. & Ex. E: Nugroho undated Aff. ¶ 4.)

**Plaintiffs' Motion for Summary Judgment**

Plaintiffs move for summary judgment (Dkt. No. 28), arguing that "[t]here is no genuine dispute" that Nugroho infringed plaintiffs' copyrights by selling derivative works, that is, instructor's solution manuals to plaintiffs' copyrighted textbooks.  (Dkt. No. 29: Pls. Br. at 1.) Plaintiffs seek to recover statutory damages of $750 for each of Pearson's 130 copyrighted textbooks and Cengage's fifty-seven copyrighted textbooks that Nugroho infringed.  (Pls. Br. at 7-8.)  Plaintiffs also request that the Court order that the money in Nugroho's E*Trade account ($38,492.13 as of July 31, 2009) be turned over to plaintiffs to partially satisfy the judgment.  (Pls. Br. at 8.)  Plaintiffs further seek a permanent injunction to stop Nugroho from "continu[ing] his infringing acts."  (Pls. Br. at 9.)

Nugroho responds that plaintiffs' motion is meritless because: (1) Nugroho could not have infringed plaintiffs' copyrights in the "Instructor's Solutions Manuals" because plaintiffs' "Instructor's Solutions Manuals" are not copyrighted; and (2) Nugroho's solutions manuals do not infringe on the textbooks' copyrights because the solutions manuals are not "substantial[ly] similar[]" to the textbooks.  (Dkt. No. 38: Nugroho Br. at 2-4.)

## ANALYSIS

### I.   SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary "judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); Lang v. Ret. Living Pub. Co., 949 F.2d 576, 580 (2d Cir. 1991).

The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment.  See, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608 (1970); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 36 (2d Cir. 1994); Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994).  The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof.  See, e.g., Celotex Corp. v. Catrett, 477 U.S. at 323, 106 S. Ct. at 2552-53.

To defeat a summary judgment motion, the non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986).  Instead, the non-moving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); accord, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587, 106 S. Ct. at 1356; Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (At summary judgment, "[t]he time has come . . . 'to put up or shut up.'") (citations omitted), cert. denied, 540 U.S. 811, 124 S. Ct. 53 (2003).

In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S. Ct. at 2513.[2/] The Court draws all inferences in favor of the nonmoving party only after determining that such inferences are reasonable, considering all the evidence presented.  See, e.g., Apex Oil Co. v. DiMauro, 822 F.2d 246, 252 (2d Cir.), cert. denied, 484 U.S. 977, 108 S. Ct. 489 (1987).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper."  Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 37.

---

[2/]     See also, e.g., Feingold v. New York, 366 F.3d 138, 148 (2d Cir. 2004); Chambers v. TRM Copy Ctrs. Corp., 43 F.3d at 36; Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d at 1223.

In considering a motion for summary judgment, the Court is not to resolve contested issues of fact, but rather is to determine whether there exists any disputed issue of material fact.  See, e.g., Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986), cert. denied, 480 U.S. 932, 107 S. Ct. 1570 (1987).  To evaluate a fact's materiality, the substantive law determines which facts are critical and which facts are irrelevant.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. at 248, 106 S. Ct. at 2510.  While "disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248, 106 S. Ct. at 2510 (citations omitted); see also, e.g., Knight v. U.S. Fire Ins. Co., 804 F.2d at 11-12.

## II.    PLAINTIFFS' SUMMARY JUDGMENT MOTION SHOULD BE GRANTED

Plaintiffs claim that Nugroho "infringed plaintiffs' copyrights through the sale of copies of derivative works known as instructors' solutions manuals." (Dkt. No. 29:Pls. Br. at 3-4, 6-7.)[3/]  Nugroho does not dispute that plaintiffs have registered copyrights in the textbooks or that his instructor's solutions manuals provide answers to the problems in the textbooks.  (See pages 2-3 above.) The only issue in dispute is whether the instructor's solutions manuals qualify as "derivative works."  The Court agrees with plaintiffs that they do.

---

[3/]    "Plaintiffs are not arguing that Nugroho infringed the copyright in [their] unregistered instructors' solutions manual.  Rather, plaintiffs are arguing that Nugroho infringed the copyrights in their registered textbooks. . . . through the sale of derivative works, the instructors' solutions manuals."  (Dkt. No. 39: Pls. Reply Br. at 4-5.)

The Copyright Act "grants copyright owners a bundle of exclusive rights, including the rights . . . 'to prepare derivative works based upon the copyrighted work.'" <u>Castle Rock Entm't, Inc.</u> v. <u>Carol Publ'g Group, Inc.</u>, 150 F.3d 132, 137 (2d Cir. 1998) (quoting 17 U.S.C. § 106(2)). Thus, "it is a copyright infringement to make or sell a derivative work without a license from the owner of the copyright on the work from which the derivative work is derived." <u>Bucklew</u> v. <u>Hawkins, Ash, Baptie & Co.</u>, 329 F.3d 923, 930 (7th Cir. 2003) (Posner, C.J.); <u>see also,</u> 1 Melville B. Nimmer & David Nimmer, <u>Nimmer on Copyright</u> § 3.06 (2009 ed.) ("If the pre-existing work that serves as the basis for a derivative or collective is itself protected by copyright, then its unauthorized incorporation into a derivative or collective work constitutes copyright infringement. . . . [C]onsent of the copyright owner of a still-protected pre-existing work is necessary to render the derivative or collective work noninfringing . . . ."); <u>see generally</u> 4 William F. Patry, <u>Patry on Copyright</u>, Chapter 12 (2009 ed.).

The Copyright Act defines  "derivative work":

> A "derivative work" is a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted. A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a "derivative work."

17 U.S.C. § 101.  "A derivative use can certainly be complementary to, or fulfill a different function from, the original." <u>Blanch</u> v. <u>Koons</u>, 467 F.3d 244, 252 n.4 (2d Cir. 2006).[4/]  For example, in

---

[4/]    "A work is not derivative, however, simply because it is based upon the preexisting works.
                                                                                        (continued...)

Pavlica v. Behr, Judge Chin held that a "15-day Workshop Schedule" and a "Teacher's Manual

Addendum" that complemented a "Teacher's Manual" were derivative works:

> They do not have independent economic value, and they are not by themselves
> economically viable.  The Schedule is by nature derivative and it is meaningless
> without the Manual.  It has no purpose on its own as it merely lays out a schedule
> with repeated references to the Manual, using terms that appear in the Manual and
> that have little meaning without reference to the Manual.  Similarly, the Addendum
> is by nature derivative, as it merely provides additional samples of papers written by
> students and a booklet prepared for a science symposium, to be used with the
> Manual.

Pavlica v. Behr,  03 Civ. 9628, 04 Civ. 8152 , 2006 WL 1596763 at *1, 3 (S.D.N.Y. June 12, 2006)

(Chin, D.J.) (record citation omitted).  In Addison-Wesley Publ'g Co. v. Brown, 223 F. Supp. 219,

221-24, 226-28 (E.D.N.Y. 1963), the Court held that defendant's publication and sale of a "Manual

of Solutions" corresponding to the questions posed in plaintiff's copyrighted textbook infringed on

plaintiff's copyright, explaining:

> The solutions, for their part, have no independent viability. Without
> appropriation of the exact dimensions and magnitudes stipulated, in their context of
> the postulates propounded in plaintiffs' problems, whatever the form or version into
> which defendants in their effort at disguise may have translated what they purloined,
> the solutions would exist in vacuo and be meaningless.  What gives the solutions
> their value is that which, and only that which is already in the pirated works.

---

[4] (...continued)
If that were the standard, then parodies and book reviews would fall under the
definition, . . . . The statutory language seeks to protect works that are recast, transformed,
or adapted into another medium, mode, language, or revised version, while still representing
the original work of authorship."  Warner Bros. Entm't Inc. v. RDR Books, 575 F. Supp. 2d
513, 538-39 (S.D.N.Y. 2008) (citation, quotations & fn. omitted).

Addison-Wesley Publ'g Co. v. Brown, 223 F. Supp. at 220, 223-24; see, e.g., Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc., 150 F.3d at 145 (trivia book about the television sitcom, Seinfeld, "substitutes for a derivative market that a television program copyright owner such as Castle Rock 'would in general develop or license others to develop.'") (quoting Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 592, 114 S. Ct. 1164, 1178 (1994)); Educ. Testing Serv. v. Simon, 95 F. Supp. 2d 1081, 1089 (C.D. Cal. 1999) ("Defendants have further violated [plaintiff's] right to create derivative works by incorporating the copied questions into a new work – defendants' coaching materials – which add, among other things, suggested answers to the questions."); Video Aided Instruction, Inc. v. Y & S Express, Inc., No. 96 CV 518, 1996 WL 711513 at *5 (E.D.N.Y. Oct. 29, 1996) (study booklets and audio portions of an educational videocassette series were derivative works rather than separate works for purposes of statutory damages because their "viability [was] wholly dependent on the video-cassettes themselves").[5]

Here, as in Pavlica and Addison-Wesley Publ'g Co., Nugroho's instructor's solutions manuals complement plaintiffs' copyrighted textbooks, have no "independent economic value" and

---

[5]     See also, e.g., Midway Mfg. Co. v. Arctic Int'l, Inc., No. 80 C 5863, 1981 WL 1390 at * 9 (N.D. Ill. June 2, 1981) ("If defendant's device is designed and used solely to modify plaintiff's visual image, then plainly defendant's device would only have value because of plaintiff's particular copyrighted audio visual work.  Defendant, thus, by selling its device reaps the benefits of plaintiff's artistic endeavor."); Kepner-Tregoe, Inc. v. Carabio, No. 8-71025, 1979 WL 1072 at *17 (E.D. Mich. July 23, 1979) (materials used to train instructors to teach a program were "by nature derivative" because they could not "'live their own copyright life'" and "would have no purpose" without the program); Procter & Gamble Co. v. Moskowitz, 127 U.S.P.Q. 523, 524 (E.D.N.Y. 1960) (noting that "selling answers to a [copyrighted] puzzle contest [is]an unlawful interference with the plaintiff's business and copyright").

are "meaningless" without the textbooks because they merely provide answers to questions posed in the textbooks. Accordingly, this Court holds that Nugroho's instructor's solutions manuals are derivative works that infringe upon plaintiffs' textbook copyrights.[6/]

## III.   MONETARY AND INJUNCTIVE RELIEF

### A.   Statutory Damages

Plaintiffs request "minimum statutory damages" in the amount of $750 for each of the 187 copyrighted textbooks[7/] that Nugroho infringed. (See page 3 above; Dkt. No. 29: Pls. Br. at 7-8.)

The owner of a registered copyright that has been infringed can elect to recover either actual damages or statutory damages. 17 U.S.C. ¶¶ 504(a)(1)-(2), 504(c). Plaintiffs do not seek actual damages in this case, but rather ask that the Court award statutory damages. (See page 3 above.)

---

[6/]   Nugroho relies upon Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp., 210 F. Supp. 2d 147 (E.D.N.Y. 2002) (Weinstein, D.J.), aff'd, 354 F.3d 112 (2d Cir. 2003), to argue that he did not infringe plaintiffs' copyrights because (1) plaintiffs' solutions manuals were not registered and (2) the solutions manuals he sold "failed to show any substantial similarity" to the textbooks. (Dkt. No. 38: Nugroho Br. at 2-4, emphasis omitted.) As plaintiffs aptly noted in their brief (see Pls. Br. at 4-5), Nugroho's arguments and Well-Made Toy Mfg. Corp. do not apply to this case because (1) plaintiffs are not arguing that Nugroho infringed its "unregistered instructors' solutions manual[s]" and (2) plaintiffs are not arguing that Nugroho infringed their copyrights by selling a "substantially similar work" but instead are arguing that Nugroho infringed their copyrights by selling derivative works. (Dkt. No. 39: Pls. Reply Br. at 4-5.)

[7/]   Nugroho does not dispute that each of the 187 works he sold via PayPal were instructor's solutions manuals to plaintiffs' textbooks. (See page 3 above.)

Statutory damages "'are available without proof of plaintiff's actual damages or proof of any damages.'"  Nat'l Football League v. PrimeTime 24 Joint Venture, 131 F. Supp. 2d 458, 472 (S.D.N.Y. 2001) (Peck, M.J.) (quoting Starbucks Corp. v. Morgan, 99 Civ. 1404, 2000 WL 949665 at *2 (S.D.N.Y. July 11, 2000) (Peck, M.J.) (citing 17 U.S.C. § 504(c)(1)); see, e.g., Business Trends Analysts, Inc. v. Freedonia Group, Inc., 887 F.2d 399, 403 (2d Cir. 1989) ("[C]opyright plaintiffs may elect at any time before final judgment to receive statutory damages under Section 504(c), a method useful where proof of actual damages or profits is insufficient."); UMG Recordings, Inc. v. Griffin, No. 08-CV-00274, 2008 WL 4974856 at *2 (N.D.N.Y. Nov. 24, 2008). ("[A] plaintiff may elect statutory damages regardless of the adequacy of the evidence offered as to his actual damages and the amount of the defendant's profits.") (quotations omitted); Interscope Records v. Sharp, No. 05-CV-920, 2007 WL 4555905 at *2 (N.D.N.Y. Dec. 19, 2007) (same); 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.04[A] (2009 ed.) ("Under the current [Copyright] Act, the copyright owner may elect to recover statutory damages, instead of actual damages and defendant's profits.  He may, moreover, make such an election regardless of the adequacy of the evidence offered as to his actual damages and the amount of defendant's profits, and even if he has intentionally declined to offer such evidence, although it was available. . . . The availability of statutory damages under the current Act, even under circumstances in which plaintiff's damages or defendant's profits are susceptible to precise evaluation, represents a departure from the pertinent provisions of the 1909 Act.") (fns. omitted); 6 William F. Patry, Patry on Copyright § 22: 153-208 (2009 ed.).  As Professor Patry has explained:

Since actual damages and profits frequently are difficult to prove, the Copyright Act provides for minimum and maximum statutory damages.  These damages may be elected by the copyright owner at any time before final judgment is rendered, without proof of actual damages.

2 William F. Patry, Copyright Law & Practice at 1170 (1994) (fns. omitted).

The Copyright Act's provision for statutory damages is found in 17 U.S.C. § 504(c)(1), which provides:

[T]he copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.  For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.

17 U.S.C. § 504(c)(1) (emphasis added).  "The current statute shifts the unit of damages inquiry from number of infringements to number of works."  Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd., 996 F.2d 1366, 1381 (2d Cir. 1993).  "Where the suit involves infringement of more than one separate and independent work, minimum statutory damages [of $750] for each work must be awarded."  6 William F. Patry, Patry on Copyright § 22:185 (2009 ed.); see also, e.g., WB Music Corp. v. RTV Commc'n Group, Inc., 445 F.3d 538, 540 (2d Cir. 2006) ("'[T]he total number of awards of statutory damages that a plaintiff may recover in any given action depends on the number of works that are infringed and the number of individually liable infringers, regardless of the number of infringements of those works.'"); D.C. Comics Inc. v. Mini Gift Shop, 912 F.2d 29, 34 (2d Cir. 1990) ("Within these [minimum and maximum amount] limitations the court's discretion and sense of justice are controlling, but it has no discretion when proceeding under this [statutory damages] provision to go

outside of them.") (quotation omitted); <u>Warner Bros. Entm't Inc.</u> v. <u>RDR Books</u>, 575 F. Supp. 2d 513, 554 (S.D.N.Y. 2008) (Awarding "statutory damages of $750.00 for each of the seven <u>Harry Potter</u> novels" infringed by defendant's derivative work.); 4 Melville B. Nimmer & David Nimmer, <u>Nimmer on Copyright</u> § 14.04[B][1][a] (2009 ed.) ("[T]he statute itself sets certain minimum and maximum limits for such [statutory] damages, which are mandatory.").; <u>id</u>. § 14.04[E][1][a] ("If defendant's infringing work copies from several different copyrighted works owned by plaintiff, the applicable minimum damages can be multiplied by the number of such infringed copyrights."); 6 William F. Patry, <u>Patry on Copyright</u> § 22:184 (2009 ed.) ("[B]y contrast with the 1909 Act, under the 1976 Act awards of statutory damages are determined by the number of works infringed, <u>not</u> by the number of infringing acts.  This represents a fundamental shift between the two acts.").

Accordingly, plaintiffs are entitled to the requested minimum statutory damages of $750 for each of Pearson's 130 copyrighted textbooks and Cengage's fifty-seven copyrighted textbooks that Nugroho infringed, totaling $97,500 for Pearson and $42,750 for Cengage.  The Court also should order the receiver for Nugroho's E*Trade account to release those funds to plaintiffs to partially satisfy the judgment.

### B.  <u>Injunctive Relief</u>

Plaintiffs also request a permanent injunction to stop Nugroho from "continu[ing] his infringing acts."  (<u>See</u> page 3 above.)  In <u>Warner Bros. Entm't Inc.</u> v. <u>RDR Books</u>, Judge Patterson summarized the standard for injunctive relief in copyright cases, as follows:

> The Copyright Act provides that courts "may" grant injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17

> U.S.C. § 502(a).  In <u>eBay Inc.</u> v. <u>MercExchange, LLC</u>, the Supreme Court made clear that an injunction does not automatically follow a determination that a copyright has been infringed.  547 U.S. 388, 392-93, 126 S. Ct. 1837 (2006).  A copyright plaintiff seeking a permanent injunction still must satisfy the traditional four-factor test before the district court may use its equitable discretion to grant such relief. The plaintiff must demonstrate: (1) that it will suffer an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

<u>Warner Bros. Entm't Inc.</u> v. <u>RDR Books</u>, 575 F. Supp. 2d 513, 551-52 (S.D.N.Y. 2008); <u>see</u>, <u>e.g.</u>, <u>eBay Inc.</u> v. <u>MercExchange, L.L.C.</u>, 547 U.S. 388, 391-93, 126 S. Ct. 1837, 1839-40 (2006) ("According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief.  A plaintiff must demonstrate:  (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. . . . And as in our decision today, this Court has consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed."); 6 William F. Patry, <u>Patry on Copyright</u> §§ 22:74, 22:78 (2009 ed.).

Plaintiffs satisfy the four step test.  Because plaintiffs have succeeded in showing that Nugroho infringed their copyrights, irreparable harm may be presumed.  <u>See</u>, <u>e.g.</u>, <u>ABKCO Music, Inc.</u> v. <u>Stellar Records, Inc.</u>, 96 F.3d 60, 66 (2d Cir. 1996); <u>SimplexGrinnell LP</u> v. <u>Integraged Sys. & Power, Inc.</u>, 07 Civ. 2700, – F. Supp. 2d –, 2009 WL 857504 at *2 (S.D.N.Y. Mar. 31, 2009)

15

(Lynch, D.J.) ("[I]rreparable injury may generally be presumed 'when a copyright plaintiff makes a prima facie showing of infringement.'"), modified on other grounds, – F. Supp. 2d –, 2009 WL 2223692 (S.D.N.Y. July 27, 2009); Warner Bros. Entm't Inc. v. RDR Books, 575 F. Supp. 2d at 552 ("Because Plaintiffs have demonstrated a case of copyright infringement, and because Defendant has failed to establish its affirmative defense to copyright infringement, irreparable injury may be presumed in this case.  In view of eBay, which applied the traditional four-part test for injunctive relief in the context of a patent claim, there is some question of whether the presumption of irreparable harm still applies.  District courts, however, have continued to apply the presumption post-eBay.").  Plaintiffs also have demonstrated that monetary damages are inadequate to compensate for their injury.  Nugroho likely will not be able to satisfy the monetary judgment beyond the $38,492.13 in his E*Trade accounts because, without those accounts, he does not "have the sufficient fund[s] to cover [his] basic living expenses such as paying for meals and house rents."  (Dkt. No. 32: Scileppi Aff. Ex. D: Nugroho 5/13/09 Letter.)  Nor has Nugroho stated, much less given any assurances, that he will not continue to infringe, absent an injunction.  See, e.g., SimplexGrinnell LP v. Integraged Sys. & Power, Inc., 2009 WL 857504 at *23 ("there is ample evidence to suggest that [defendant] would continue to engage in [infringing activity] absent an injunction, making any remedy at law inadequate.").  Warner Bros. Entm't Inc. v. Carsagno, No. 06 CV 2676, 2007 WL 1655666 at *6 (E.D.N.Y. June 4, 2007) ("As there is no assurance in the record against defendant's continued violation of plaintiff's copyrights, a remedy at law is insufficient to compensate for plaintiff's injuries.").  As to the third factor, balance of the hardships, Nugroho has not identified any

hardship beyond the inability to sell instructor's solutions manuals that infringe plaintiffs' copyrights. Plaintiffs, however, sell their own instructor's solutions manuals and would be harmed if they continued to lose sales to defendant's infringing copies.[8]  Finally, as to the fourth step, Nugroho has not shown that an injunction would "disserve" the public.[9]  Accordingly, the Court should issue a permanent injunction enjoining Nugroho from publishing and/or selling any instructor's solutions manuals to any of plaintiffs' copyrighted textbooks.

### CONCLUSION

For the reasons set forth above, plaintiffs' summary judgment motion (Dkt. No. 28) should be GRANTED.  The Court should award Pearson statutory damages of $97,500 and award Cengage $42,750.  The Court also should permanently enjoin Nugroho from violating plaintiffs' copyrights.  The Court also should order Clifford James, Esq., the temporary receiver for Nugroho's

---

[8]      See, e.g., SimplexGrinnell LP v. Integrated Sys. & Power, Inc., 2009 WL 857504 at *23 ("[D]efendant has not identified any hardship it would suffer if infringing uses of the Programmer were enjoined beyond the legally unprotected 'hardship' of loss of ability to engage in unauthorized conduct and the concomitant business opportunities that such unauthorized activities may provide."); Warner Bros. Entm't Inc. v. RDR Books, 575 F. Supp. 2d at 553 ("While Plaintiffs have identified their hardships if an injunction were not granted, Defendant identifies no hardship it would suffer if publication of the Lexicon were enjoined. The only possible harm to Defendant is the loss of the chance to sell an infringing book, but the law does not protect this type of hardship.").

[9]      See, e.g., Warner Bros. Entm't, Inc. v. Carsagno, 2007 WL 1655666 at *6 ("'[T]he public interest would not be disserved by a permanent injunction, as there is a greater public benefit in securing the integrity of [plaintiff's] copyrights than in allowing [defendant] to make [the] copyrighted material available to the public.'").

H:\OPIN\PEARSON

attached E*Trade accounts, to turn over the funds from the E*Trade account to plaintiffs to partially satisfy the judgment.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6.[10]  Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Deborah A. Batts, 500 Pearl Street, Room 2510, and to my chambers, 500 Pearl Street, Room 1370.  Any requests for an extension of time for filing objections must be directed to Judge Batts (with a courtesy copy to my chambers).  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822, 115 S. Ct. 86 (1994); Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.), cert. denied, 506 U.S. 1038, 113 S. Ct. 825 (1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988);

---

[10]    If the pro se defendant requires copies of any of the cases reported only in Westlaw, plaintiff should request copies from defense counsel. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009); SDNY-EDNY Local Civil Rule 7.1(c)

McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

72, 6(a), 6(d).

DATED:     New York, New York
               October 27, 2009

                                      **Andrew J. Peck**
                                  United States Magistrate Judge

Copies to:     William Dunnegan, Esq.
               Laura Scileppi, Esq.
               Henry Nugroho (Regular & Certified Mail; Email)
               Judge Deborah A. Batts

H:\OPIN\PEARSON